Sterilite Corporation *vs.* Continental
Casualty Company.

Suffolk. January 8, 1985. — June 14, 1985.

Present: Greaney, C.J., Kaplan, & Warner, JJ.

*Damages*, Breach of contract. *Interest*.

In an action for breach of contract against an insurer arising from the
  defendant's refusal to defend a products liability claim against the plain-
  tiff, the judge properly awarded damages to the plaintiff with interest
  under G. L. c. 231, § 6C, from the date the insurer refused to defend
  the claim against the plaintiff, even though the bulk of the plaintiff's
  legal expenses in defending the products liability claim was not incurred
  until after the commencement of its action against the insurer. [217-220]

Civil action commenced in the Superior Court Department
on October 20, 1980.

After the decision of this court reported in 17 Mass. App.
Ct. 316 (1983), entry of judgment was ordered by *John Paul
Sullivan*, J.

*Terrance J. Hamilton* for the defendant.

*Lisa G. Arrowood* (*Stephen H. Oleskey* with her) for the
plaintiff.

Warner, J. In *Sterilite Corp.* v. *Continental Cas. Co.*, 17
Mass. App. Ct. 316 (1983), we affirmed, with a modification
not here relevant, a judgment of the Superior Court declaring
that the defendant was in breach of its duty to the plaintiff
under an insurance policy to defend an action brought against
the plaintiff, and that the defendant was liable to the plaintiff
in the amount of $108,370.76 for counsel fees and related
expenses incurred in the defense of that action. This appeal
by the defendant comes to us from the subsequent entry of a
judgment which ordered the payment of interest on the damages

awarded from January 5, 1976.[1] We are asked to construe the provisions of G. L. c. 231, § 6C.

Following the defendant's refusal on January 5, 1976, to defend the third-party action against the plaintiff, the plaintiff incurred legal expenses over a period of about six years and paid a substantial portion of them in response to over twenty billings for varying amounts.[2] The damages awarded comprised these expenses. The defendant argues on appeal that the computation of interest on that award from January 5, 1976, results in a windfall to the plaintiff, as damages were unliquidated at that time and the bulk of legal expenses was not incurred until after the commencement of this action on October 20, 1980.[3] In its reply brief, the defendant urges us to hold that interest should be computed as of the dates of the various billings for legal expenses or as of the date of the commencement of this action.[4]

Much of the defendant's argument is in misplaced reliance on the rule in Massachusetts before the enactment of G. L. c. 231, § 6C, in 1968, by St. 1968, c. 763.[5] The former general rule governing the right to prejudgment interest distinguished between contract actions involving liquidated damages and

---

[1] In its answer to the plaintiff's complaint the defendant admitted that it disclaimed coverage and declined to defend the third-party action on January 5, 1976.

[2] Of the slightly more than $98,000 in legal expenses for the services and disbursements of one law firm, more than eighty percent was billed after the commencement of the action by the plaintiff against the defendant on October 20, 1980.

[3] The defendant makes no claim under either the United States or the Massachusetts Constitutions. Our review involves only a question of statutory construction.

[4] In its original brief the defendant suggested that we determine that interest be computed as of January 26, 1984, the date of the entry of the rescript following our decision in *Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316 (1983), or as of September 27, 1982, the date of entry of the original judgment, but no earlier than the date of the commencement of this action.

[5] Amendments subsequent to 1968 do not affect our discussion of the effect of § 6C on prior law.

those involving unliquidated damages. Interest was allowed in actions for liquidated damages[6] as of the date of the breach, see, e.g., *New York Bank Note Co.* v. *Kidder Press Mfg. Co.*, 192 Mass. 391, 405-406 (1906), or the date of demand, see, e.g., *Thomas* v. *Wells*, 140 Mass. 517, 521 (1886); *Gay* v. *Rooke*, 151 Mass. 115, 117 (1890), and, in those for unliquidated damages, as of the date of the writ. See *Cochrane* v. *Forbes*, 267 Mass. 417, 420 (1929), and cases cited.[7]

General Laws c. 231, § 6C, as appearing in St. 1982, c. 183, § 3, provides:

> *"In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk* of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum *from the date of the breach or demand.* If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action." (Emphasis supplied.)

In examining the impact of § 6C we apply familiar principles of statutory construction. "'[W]here the language of a statute

---

[6]"Liquidated damages . . . mean damages, agreed upon as to amount by the parties, or fixed by operation of law, or under the correct applicable principles of law made certain in amount by the terms of the contract, or susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in the possession or knowledge of the party to be charged. Unliquidated damages are those which cannot thus be made certain by one of the parties alone." *Cochrane* v. *Forbes*, 267 Mass. 417, 420 (1929). See 5 Corbin, Contracts § 1046 (1964).

[7]Massachusetts was in the minority in permitting interest on unliquidated damages as of the date of the writ; the majority of jurisdictions did not allow prejudgment interest on unliquidated damages at all. The rationale of the majority rule was that, "if the defendant could not determine on any fixed day what was due, no interest could be recoverable because defendant knew not what, if anything, he should pay." *Funkhouser* v. *J.B. Preston Co.*, 290 U.S. 163, 167 (1933). See Prejudgment Interest: Survey and Suggestion, 77 Nw. U.L.Rev. 192, 197 (1982); Prejudgment Interest: An Element of Damages Not to be Overlooked, 8 Cum.L.R. 521, 521-522 (1977).

is plain there is no room for speculation as to its meaning or its implication. The Legislature must be presumed to have meant what the words plainly say, and it also must be presumed that the Legislature knew pre-existing law and the decisions of [the Supreme Judicial] [C]ourt.' *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950). Moreover, '[i]t is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation.' *Prudential Ins. Co. of America* v. *Boston*, 369 Mass. 542, 547 (1976)." *First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 151 (1982). *Brown* v. *Taunton*, 16 Mass. App. Ct. 614, 617-618 (1983). See G. L. c. 4, § 6; *Holbrook* v. *Randolph*, 374 Mass. 437, 440-441 (1978). "[T]echnical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning." G. L. c. 4, § 6, Third. See *Chapin* v. *Lowell*, 194 Mass. 486, 488 (1907). "[T]he statutory language is the principal source of insight into legislative purpose." *Bronstein* v. *Prudential Ins. Co. of America*, 390 Mass. 701, 704 (1984).[8]

We think § 6C "means just what it says on its face . . . ." *Sprague* v. *O'Connell*, 18 Mass. App. Ct. 230, 235 (1984). In unequivocal language it directs that the clerk of court shall, see *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983), add interest to contract damages as of the date of the breach of the contract when that date has been established. In these circumstances the statute permits no compromise; it commands a ministerial act. It seems clear to us that in this respect the Legislature intended to abrogate the common law rule which distinguished between liquidated and unliquidated damages.[9] Cf. *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy*, 550 F. Supp. 231,

---

[8] We have not been referred to nor have we found any legislative history to the enactment of G. L. c. 231 § 6C.

[9] "[A] distinction . . . between cases of liquidated and unliquidated damages, is not a sound one. Whether the case is of the one class or the other, the injured party has suffered a loss which may be regarded as not fully compensated if he is confined to the amount found to be recoverable as of the time of breach and nothing is added for the delay in obtaining the award

246 (D. Mass. 1982), aff'd in part, rev'd in part on other grounds, 708 F.2d 1 (1st Cir. 1983). Our prior cases applying § 6C have approved, without discussion, the construction which we adopt here. See *Cesco Mfg. Corp.* v. *Norcross, Inc.*, 7 Mass. App. Ct. 837, 845 (1979); *Steranko* v. *Inforex, Inc.*, 8 Mass. App. Ct. 523, 534-535 (1979); *Ward* v. *American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 101-102 (1983) (Breach of contract occurred when employment terminated prematurely. Damages awarded consisted of the amount of commissions due to employees to the date employment could properly have been terminated. Interest was calculated from the date of the breach).[10]

While, absent some constitutional infirmity which is not asserted in this case, interest awarded in contract cases is "a matter of legislative grace," cf. *Verrochi* v. *Commonwealth*, 394 Mass. 633, 636 (1985), we think there is a discernible and plausible reason — beyond the elimination of the distinction between cases involving liquidated and unliquidated damages — for establishing fixed dates from which interest is to be calculated. The Legislature may well have determined that the merit of other approaches was outweighed by the adminis-

---

of damages." *Funkhouser* v. *J.B. Preston Co.*, 290 U.S. at 168. See also Prejudgment Interest: An Element of Damages Not to be Overlooked, 8 Cum.L.R. at 521-522.

[10] The defendant's reliance on *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159 (1979), is misplaced. In that case, involving the misappropriation of trade secrets, the defendant's net profits, which primarily accrued subsequent to the filing of the action, were awarded to the plaintiff as damages. The court held that beyond the mandate of G. L. c. 235, § 8, which controlled in that case (requiring the addition of interest from the time a master files his report to the time judgment is entered in any action where the award is based on the report), "considerations of relative hardship" should govern the award of interest from an earlier date. *Id.* at 182. In rejecting the plaintiffs' argument that G. L. c. 231, §§ 6B (interest in tort actions) and 6C, entitled them to interest from the date of the filing of the complaint, the court noted that the damages awarded were based principally on profits and losses incurred after commencement of the action and commented that neither section was "intended to award interest on damages accruing after the filing of the action . . . ." *Id.* at 182 n.21. In *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 348-349 (1984), the court, confining itself to § 6B, declined to reconsider the holding in *Jet Spray* that § 6B was

trative value of "a fixed rule for mathematically calculable interest . . . avoid[ing] the costs and delays incident to disputes over details such as might be presented here if interest were awarded separately on many elements of damages from many different dates of accrual." *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy,* 550 F. Supp. at 246-247, aff'd on this issue, 708 F.2d at 12. The Legislature was, of course, free to make that accommodation.[11]

The phrase "breach of contract" has an established meaning in law which we are bound to accept. See G. L. c. 4, § 6, Third. A breach of contract is "a failure to perform for which legal excuse is lacking." *Realty Developing Co.* v. *Wakefield Ready-Mixed Concrete Co.,* 327 Mass. 535, 537 (1951). See 11 Williston, Contracts § 1290 (3d ed. 1968); 4 Corbin, Contracts § 943 (1951). The first Superior Court judgment, affirmed by this court, 17 Mass. App. Ct. 316, established that the defendant's breach occurred on January 5, 1976, when it disclaimed coverage under its insurance policy with the plaintiff and refused to defend the third-party action. We reject the defendant's argument that its breach was not on January 5, 1976, but on the various dates on which the plaintiff was billed for legal expenses by counsel retained to defend the third-party action. Contrast *United Cal. Bank* v. *Eastern Mountain Sports, Inc.,* 546 F. Supp. 945, 975-977 (D. Mass. 1982), aff'd 705 F.2d 439 (1983) (multiple breaches of sales contract).

*Judgment affirmed.*

---

inapplicable to cases involving the misappropriation of trade secrets. In this respect, the fundamental rationale of both *Jet Spray* and *USM Corp.* is that net profits damage awards in misappropriation of trade secret cases, unlike damage awards in other tort actions, may result in compensating a plaintiff for more than his actual loss. *Jet Spray, supra* at 182-183. *USM Corp., supra* at 348. See *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy,* 550 F. Supp. at 247 n.2.

[11] Contrast the approach of the New York Legislature, which would allow the result for which the defendant contends but which appears to recognize the inherent difficulties involved. The New York statute provides that interest "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. Civ. Prac. Law § 5001(b) (McKinney 1963).