Jack H. SHAPIRO, et al., Plaintiffs,

v.

AMERICAN HOME ASSURANCE COMPANY, Pacific Indemnity Company, Certain Underwriters at Lloyds of London, and Surplus Lines Insurance Company, Defendants and Third-Party Plaintiffs,

v.

Clinton W. BENNETT, et al.,
Third-Party Defendants.

Civ. A. No. 75–2728–K.

United States District Court,
D. Massachusetts.

Aug. 12, 1985.

Edward J. Barshak, Jeffrey Somers, Alexander E. Finger, William A. Zucker, Boston, Mass., Oscar Wasserman, Newton, Mass., for plaintiffs.

Garrick F. Cole, G. Richard Snell, Daniel B. Bickford, Robert City, Boston, Mass., for defendants.

Mark A. Michaelson, Boston, Mass., for third-party defendants.

KEETON, District Judge.

Plaintiffs in this action, Mario DePalo and Alfred Bloom, are former officers and directors of Giant Stores Corp. ("Giant"). They brought suit against defendants Pacific Indemnity Company ("Pacific"), Lloyds of London, and International Surplus Lines Insurance Company, seeking a declaration that they are covered under three Securities Act Liability policies issued by defendants and seeking reimbursement under the policies for various attorney's fees, costs, and expenses they have incurred in the defense of several actions brought against them. Pursuant to Fed.R. Civ.P. 42(b), trial of this case was separated into phases. After a two-day bench trial on November 27–28, 1984, the court held, in an Opinion dated December 31, 1984, 616 F.Supp. 900 (D.Mass.), that plaintiffs' claim to coverage under the three Securi-

ties Act Liability policies was not barred by the fraudulent activities of other named insureds. Subsequently, defendants waived any defense to coverage based on fraud on the part of DePalo and/or Bloom. Meanwhile, Touche Ross & Co. ("Touche"), as assignee of claims against DePalo and Bloom in several other cases in this and other courts, and as third-party defendant in this case, filed a motion seeking enforcement of an alleged settlement between Touche Ross and defendant insurers in this case. Trial of all remaining issues (including those related to enforcement of the alleged settlement) having been completed, the principal questions that remain to be addressed before the entry of final judgment in this case are the following:

1. Do defendant insurers owe a duty to indemnify DePalo and Bloom for costs of defense in an action in the New Jersey Superior Court entitled *H. Rosenblum, Inc. v. Jack F. Adler, et al. v. Giant Stores Corp., et al.*, No. L–5968–74, in which DePalo and Bloom are named as third-party defendants, and do the insurers owe a duty to pay on their behalf, within the applicable limit of liability, damages for which DePalo and Bloom may be held liable? As bearing on these questions, to what extent, if at all, do the pleadings in the New Jersey action allege facts against DePalo and Bloom that, if proved, would be within the scope of the defendants' policies?

2. What amount, if any, of attorney's fees, costs, and expenses may DePalo and Bloom recover from defendant insurers under the policies?

3. Should this court enforce the settlement agreement purportedly entered into by the insurers and Touche relating to claims in this and other related actions? What effect would enforcement of this agreement have on claims which have been made or may be made in the future against DePalo and Bloom?

4. What additional declaratory relief, if any, is necessary to protect the interests of the parties?

## I. *The Coverage Provisions*

The nature of the coverage under the policies at issue here is somewhat different from that provided by most liability insurance policies. Ordinarily, liability insurance provisions clearly differentiate between a duty to pay on behalf of the insured sums that the insured is legally obligated to pay as damages, because of harms or losses to which the insurance applies, and a duty to defend any suit against the insured seeking such damages. Liability insurance policies of the usual mode also declare that the insurer shall have the right as well as the duty to defend on behalf of the insured. In contrast with that common pattern of liability insurance applying in other contexts, the Pacific Policy at issue here includes the following provisions (which are in effect incorporated by reference into the Lloyd's insurers and International Surplus Lines policies):

I. Insuring Clause:

... Pacific Indemnity Company ... hereby undertakes and agrees to indemnify each Insured ... from and against such loss, liability, cost or expense, as hereinafter provided, as the Insured may incur or sustain or discover that it has incurred or sustained by reason of any claim or claims which may be made against the Insured in respect of any transaction entered into during the period of this insurance specified in item 4 of the Declarations under any provision or provisions of the United States Securities Act ... or the common or statutory law ... with respect to ...

(b) any purchase or sale of securities of [Giant Stores] ...

but only to the extent that such loss, liability, cost or expense is incurred or sustained by reason of any claim or claims that the Registration Statement, any Preliminary Prospectus or the Prospectus in the form filed with the Securities and Exchange Commission at or about the time the Registration Statement becomes effective or as thereafter amended or supplemented, contained an untrue statement of a material fact or

omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

. . . . .

III. Conditions

(a) This insurance does not cover any loss, liability, cost or expense unless the Insured with respect to a particular claim shall have complied with the following subparagraphs 1. and 2. of this Condition ...

. . . . .

(2) The Insured may employ attorneys to investigate, defend or negotiate for the settlement of any claim provided always that they shall at all times co-operate to the fullest extent with the Insurer and with the attorneys designated by the Insurer and give due regard to any opinion expressed by them. The Insured shall not admit or assume any liability, settle any claim, or incur any expenses in connection with such claim without the written consent of the attorneys designated by the Insurer but such consent shall not be unreasonably withheld. Subject to Condition (b) hereof [relating to the collective "Self-insured Retention" and limit of liability] all reasonable fees and disbursements of the Insured's attorneys, incurred in connection with such claim, shall be considered part of the loss with reference to which such fees and disbursements were incurred.

. . . . .

Plaintiffs' Exhibit 2, Registrants' Form C.

In the present case, the defendant insurers have not asserted a right to defend and plaintiffs have not asserted that the insurers have a duty to defend rather than a duty to indemnify them as to costs of defense. In these circumstances, I need not address issues that might have been presented had either of those contentions been made. Instead, I proceed to issues with respect to the scope of the insurers' duty to indemnify both as to costs of defense and as to liability imposed on the insureds by law within the scope of the coverage.

II. *New Jersey Litigation*

The action filed in New Jersey Superior Court, *H. Rosenblum, Inc. v. Jack F. Adler, et al. v. Giant Stores Corp., et al.,* Superior Court of New Jersey, Law Division, Bergen County, Docket No. L–5968–74, arises out of a 1972 transaction between plaintiffs in that case and Giant, whereby the plaintiffs exchanged stock in their retail business for unregistered Giant securities and merged their business into Giant's. The *Rosenblum* plaintiffs make no claim against Bloom, DePalo, or any other Giant officer or director; they allege that they relied on false representations made by Touche as to Giant's financial condition. Touche, in turn, has filed a third-party complaint against DePalo and Bloom, among others, setting out six separate claims. Touche seeks to recover on grounds of fraud (Count I), contract (Count II), interference with contractual rights (Count III), negligent misrepresentation (Count IV), indemnity (Count V), and contribution (Count VI). Paragraph 39 of the third-party complaint, incorporated in Counts V and VI, states the following:

Touche Ross & Co. has been sued by a number of shareholders and creditors of defendant Giant in various Courts. In each of these cases, it has been alleged that certain financial statements, prepared by Giant and the individual third-party defendants, of Giant and of Giant and its subsidiaries were in some material respect false and/or misleading. Touche Ross & Co. performed audit examinations, and issued reports, on certain of said financial statements.

Plaintiffs' Exhibit 10, at 13. Paragraph 42 of the third-party complaint, also incorporated in Counts V and VI, states as follows:

If it is determined by any Court that any person or entity was damaged by reason of the alleged falsity and/or misleading character of the aforesaid financial statements of Giant and Giant and its subsidi-

aries and if liability is imposed on Touche Ross & Co. for any reason in connection with said financial statements including, without limiting the generality of the foregoing, liability for fraud, actual or constructive, liability for violation of various federal securities laws, and/or liability for negligence of any kind, then said liability will be imputed, secondary, derivative and passive and arises only out of the active misconduct of the individual third-party defendants and Giant.

Plaintiffs' Exhibit 10, at 14.

■ A commonsense interpretation of the above paragraphs discloses that Touche's third-party claim against DePalo and Bloom incorporates allegations of fraud by DePalo and Bloom based upon false financial statements of Giant contained in the August 24, 1972 registration statement filed with the Securities and Exchange Commission ("SEC"). The parties have already stipulated that five securities fraud cases brought in this district and in the Southern District of New York allege facts against DePalo and Bloom which, if proved, would be within the scope of coverage of defendants' policies, if DePalo and Bloom are entitled to coverage under the policies. Because I have concluded that DePalo and Bloom are entitled to coverage under the policies with respect to these five lawsuits and because Touche wishes to recover from DePalo and Bloom indemnity as to any judgment against Touche arising out of any action brought on account of the false financial statements, I conclude that the New Jersey action alleges facts against DePalo and Bloom that, if proved, would be within the scope of the defendants' policies. Moreover (even though maintaining that at least some of the claims of Touche against DePalo and Bloom in the New Jersey action are beyond the scope of coverage), defendants have stated in their most recent submissions on the question that they agree to bear their share of the cost of defense of the New Jersey action as related to their obligation regarding costs of defense of DePalo and Bloom with respect to claims that are covered by the policies. Reply Memorandum to Alfred H. Bloom's Post-Trial Brief at 6 (June 10, 1985); Reply Memorandum to Mario DePalo's Post-Trial Brief at 2 (June 6, 1985).

■ An additional, independent reason exists for holding that DePalo and Bloom are entitled to coverage in relation to the New Jersey action. Coverage under defendants' policies extends to claims as to which false registration statements are among the alleged causes of the losses for which damages are claimed. All of Touche's third-party claims against DePalo and Bloom are at least potentially of this character. Were this court to hold that individuals in the circumstances of DePalo and Bloom are not covered for Touche's third-party claims, securities fraud plaintiffs could sue accountants, who could then claim over against officers and directors, allegedly for making in some other way precisely the same false representations as were made in the registration statements, thereby rendering any Securities Act Liability insurance held by officers and directors ineffectual. I conclude that in circumstances such as this, where DePalo and Bloom assert that the claims made against them in the New Jersey action do in fact relate to the false financial statements which were part of Giant's registration statement, even if the allegations of the third-party complaint do not make that entirely clear, DePalo and Bloom would be entitled to coverage in the New Jersey action both as to defense costs and as to payments in discharge of their liability, upon proof of their assertion as to the true basis of the claims against them. Cf. *Conner v. Transamerica Insurance Co.*, 496 P.2d 770 (Okla.1972) (under professional liability policy, defendant insurer had obligation to defend plaintiff in tort action making groundless charges against plaintiff of conspiracy, fraud and dishonesty); *Burd v. Sussex Mutual Ins. Co.*, 56 N.J. 383, 267 A.2d 7 (1970) ("duty to defend may depend upon the actual facts and not upon the allegations in the complaint;" differing, however, from the rationale of the *Conner* court and declining to follow a California decision on which *Conner* relied). More-

over, the duty to defend under traditional liability insurance policies extends beyond the duty to pay on behalf of the insured in discharge of tort liability imposed by law and applies as well in circumstances in which a potential conflict of interest exists between the insured and insurer by reason of a good faith contention of the insured that the tort action is based on circumstances within the scope of the liability insurance coverage. *See, e.g., Magoun v. Liberty Mutual Insurance Co.*, 346 Mass. 677, 195 N.E.2d 514 (1964) (allegations insufficient to show that a loading exclusion applied; insurer bound to defend "even if the proof would ultimately relieve" the insurer from liability to pay on behalf of the insured in discharge of liability imposed by law; insurer held liable for fee of insured's counsel as part of the expense of defending, having acquiesced in insured's employment of his own counsel after refusing insurer's offer to proceed with defense under a reservation of rights).

I conclude that the statement of the duty to reimburse costs of defense in the policies at issue here is at least as broad as the duty to defend under traditional liability insurance provisions. Indeed, no argument has been advanced for a narrower interpretation. For these reasons I conclude that DePalo and Bloom are entitled to indemnity for the costs of defense they have incurred to date, and for reasonable costs of defense incurred in the future.

Though I need not and do not ground my decision in the present case on a more expansive view of the duty of defense, I do take note of impressive support for the more expansive view that a liability insurer's duty to defend applies, in ambiguous circumstances, until the insurer can "confine the claim to a recovery that the policy [does] not cover." *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 753 (2d Cir. 1949) (L. Hand, C.J.) (applying New York law).

## III. *Attorney's Fees, Costs, and Expenses to be Awarded*

DePalo and Bloom presented evidence at a two-day phase of trial on May 9 and 10, 1985 with respect to the costs and expenses, including legal fees, they assert they are entitled to recover from the insurers under the Securities Act Liability policies. The parties have also submitted post-trial briefs on the question of costs and expenses to be awarded. I address the various claims of each plaintiff in turn.

DePalo asserts he has incurred $18,708.11 in fees and expenses through May 10, 1985 in connection with the five securities fraud cases against him in New York and Massachusetts. *See* Plaintiffs' Exhibit 47A. He claims that he is entitled to a complete reimbursement for the above amount under the terms of defendants' policies. As noted above, the insuring clause of the Pacific policy provides that, in consideration of the premium paid, Pacific agrees to indemnify and hold the insureds harmless "from and against such loss, liability, cost or expense, as hereinafter provided, as the Insured may incur or sustain or discover that it has incurred or sustained by reason of any claim or claims which may be made against the Insured ..." The policy contains a clause in paragraph III(b) under the caption "Conditions" providing that the policy covers

the loss, liability, cost or expense of the Insured collectively ... whether in satisfaction of one or more judgments or in the Insured's settlement of one or more claims for damages or for reasonable expenses incurred by the Insured for investigation, negotiation or defense (including reasonable fees and disbursements of the attorneys for the Insured) or for costs taxed against the Insured in any legal proceedings or for interest accruing after entry of judgment, or for all these combined for all Insured collectively.

The insurers do not dispute DePalo's entitlement to the amount requested, with two exceptions. *See* Reply Memorandum to Mario DePalo's Post-Trial Brief at 1–4. First, defendants have admitted their obligation to reimburse DePalo only for those fees and expenses he has in fact paid

in connection with his defense of the New York and Massachusetts actions. They have not agreed to reimburse DePalo for $1,084.55 in unpaid costs and expenses incurred in conjunction with those actions. I conclude that DePalo is entitled to reimbursement for this disputed amount. Such an amount is clearly a "loss, liability, cost or expense" under the terms of the policy, incurred in connection with actions for which I have determined DePalo is entitled to coverage, regardless of whether DePalo has in fact paid the expenses to the law firms involved. Defendants have offered no reasoned basis for holding that they are obligated to pay only expenses which DePalo has already paid, but not expenses for which DePalo is obligated, but has not yet in fact, paid.

■ Second, the insurers dispute DePalo's entitlement to $1,023.12 in "lost wages." DePalo did not in fact lose any wages in connection with the litigation covered by defendant's policies. Instead, DePalo used vacation days when taking time off from work to defend the various securities fraud cases against him, so as not to have his wages deducted. I agree with defendants' contention that the Pacific policy does not provide for compensation of an insured for the value of his lost vacation days and that the loss of vacation days is not a "loss, liability, cost or expense" under the terms of the policy. A lost vacation benefit is not a cost or expense. DePalo is not entitled to reimbursement for $1,023.12 he has claimed as "lost wages." I conclude that the remainder of the amount he asserts he has incurred in relation to the New York and Massachusetts actions constitutes reasonable expenses incurred in defense of cases for which there is coverage under defendants' policies. DePalo is therefore entitled to a reimbursement of $17,684.99 in connection with the New York and Massachusetts actions.

■ DePalo asserts he is also entitled to reimbursement for costs and expenses, including legal fees, incurred as a result of his appearances before the Securities and Exchange Commission (SEC) and during grand jury proceedings. I deny such reimbursement. The Pacific policy contains a clause in paragraph II(a) under the caption "Exclusions," providing that the insurance does not cover

> any cost or expense incurred for the investigation, negotiation or defense in any proceedings instituted in its own behalf by the Securities and Exchange Commission of the United States, by the National Association of Securities Dealers, or by any other self-regulatory authority, or in any action instituted by the United States of America, any State or other jurisdiction.

DePalo argues that the above clause must be strictly construed to apply only where the insured is a defendant or a target of the proceeding or investigation. I reject such a construction. The language of the exclusion is clear on its face, and DePalo has not called attention to any reason it should be construed other than according to its unambiguous meaning. I conclude that the manifest intent of the insurers and the insureds in this case was to deny coverage for costs or expenses incurred in proceedings before the SEC or a grand jury.

■ I further conclude that DePalo is not entitled to reimbursement for $2,675.05 in fees and expenses incurred in connection with general advice regarding potential claims against him. DePalo has failed to show that this amount, incurred in April and May of 1973, constitutes a loss, liability, cost or expense incurred by reason of any claim with respect to the purchase or sale of Giant securities, so as to be covered under the terms of the Pacific policy.

DePalo also asserts that he is entitled to reimbursement of $2,841 for fees and expenses incurred in connection with the *Rosenblum* action in New Jersey. Because I have concluded in section II, *supra,* that DePalo is entitled to coverage in the New Jersey action, and because I find that these fees and expenses have been incurred and that the amount requested is reasonable, I conclude that DePalo is entitled to the requested reimbursement of $2,841.

Bloom asserts he has incurred $55,-234.05 in fees and expenses through May 8, 1985 in connection with the cases against him in New York and Massachusetts. *See* Exhibit B to Plaintiff Alfred H. Bloom's Post-Trial Brief (May 23, 1985). Of this amount, $27,789 was expended by Bloom's present counsel, Green and Friedman. The insurers agree that Bloom is entitled to reimbursement for $27,173.50 in fees and expenses—the amount expended by Green and Friedman through March 15, 1985. *See* Reply Memorandum to Alfred H. Bloom's Trial Brief at 2, 6. Defendants object to the remaining $615.50, requested in the Second Supplemental Affidavit of Alan Green and Jeffrey M. Graeber (May 23, 1985). They have moved to strike the affidavit, which details the fees incurred by Green and Friedman through May 8, 1985, on the ground that the trial on damages concluded on May 10, 1985 and Bloom rested at that point. Since the billing at issue was received after the evidence was closed, Bloom had no opportunity to present it at trial and defendants had no opportunity at trial to contest the reasonableness of the fees requested by Green and Friedman in the second supplemental affidavit submitted after trial. In these circumstances, I do not consider the affidavit in determining the amount for which Bloom is entitled to reimbursement, given the lack of opportunity to challenge the affidavit. Nevertheless, as noted in section V, *infra*, defendants have a continuing obligation to pay the fees incurred by Bloom. The fees requested by Green and Friedman in the second supplemental affidavit may therefore properly be considered in the context of the declaratory relief to be entered in this case, wherein defendants are required to provide payment for such bills, as well as future bills incurred in connection with actions for which I have determined there is coverage under defendants' policies. I conclude that the $27,173.50 expended by Green and Friedman through March 15, 1985 was reasonably incurred in connection with actions for which I have determined there is coverage under defendants' poli-cies. Bloom is therefore entitled to reimbursement of this amount.

Bloom asserts that the remaining $27,-445.05 he is seeking was expended by his former attorney, Oscar Wasserman, in defense of the New York and Massachusetts actions. Defendants argue that Bloom has failed to establish with sufficient certainty that he is entitled to reimbursement for the above amount.

According to the evidence adduced at trial, Bloom deposited $68,011.73 with Wasserman in July 1975 to cover Bloom's legal fees. *See* Plaintiffs' Exhibit 49. Wasserman's letter of July 8, 1975 indicates that $17,355.14 of the total was allocated that day to legal fees Bloom owed him. An accompanying itemized bill details the services performed by Wasserman. *See id.* Bloom asserts that $12,222.21 of this amount was expended on litigation involving Giant. *See* Alfred H. Bloom's Post-Trial Brief at 5.

Defendants argue that Bloom is not entitled to reimbursement for amounts charged in the bill to "General & Meetings" and to "Giant Stores Corp.-Stockholders Suit-S.E.C." I agree. There is no evidence in the record which would allow the court to reasonably determine that the amounts charged to these two categories were expended in connection with claims for which there is coverage under the insurers' policies. Furthermore, as explained above, Bloom is not entitled to reimbursement for fees and expenses incurred in connection with proceedings before the SEC.

Defendants argue that Bloom also is not entitled to reimbursement for the remaining items in Wasserman's bill. They assert that "[t]here is nothing in the Wasserman documents which identify the work performed, who performed the work, the hours involved or the billing rate. The Court is left to guess as to the monies due, and this does not provide any basis for an award." Reply Memorandum to Alfred H. Bloom's Post-Trial Brief at 4. I disagree. It is undisputed that Wasserman per-

formed some work for Bloom in connection with claims for which I have determined there is coverage. The five remaining items listed on Wasserman's bill refer to the five securities fraud actions against Bloom in New York and Massachusetts. In these circumstances, and because the amounts involved are not unreasonable, I conclude that Bloom is entitled to reimbursement for the charges listed for these five items—a total of $7,730.26.

Bloom asserts that he is also entitled to reimbursement of an additional $15,611.93 expended by Wasserman—an amount equal to the balance of $15,911.44 that Wasserman had remaining from Bloom's initial deposit after July 8, 1975, minus $299.51 for fees clearly not involving Giant. *See* Alfred H. Bloom's Post-Trial Brief at 5. Bloom admits that Wasserman did not provide detailed itemizations of his services, and that his records are no longer available. Bloom testified, however, that he believed all but $299.51 of the amount remaining after July 8, 1975 was expended on litigation related to Giant. The only additional evidence available is another bill from Wasserman, dated March 5, 1976, which allocates an additional $2,690.86 in legal fees. *See* Plaintiffs' Exhibit 50.

■ I conclude that Bloom has failed to meet his burden of showing that the entire amount of $15,611.43 he seeks was reasonably expended in connection with actions for which there is coverage. As defendants correctly point out, even were I to conclude that Bloom's testimony, without additional evidence, provides a sufficient basis for concluding that he is entitled to some reimbursement, Bloom has provided neither testimony nor evidence allowing the court to distinguish between litigation involving Giant for which there is coverage (*e.g.,* the securities fraud cases) and litigation for which there is not (*e.g.,* fees incurred in connection with this litigation). I therefore conclude that Bloom is entitled to reimbursement only for the charges listed in Wasserman's bill of March 5, 1976 which refer to any of the five securities fraud cases—a total of $870.93.

Therefore, for all the above reasons, I conclude that Bloom is entitled to $35,774.69 as reimbursement for fees and expenses incurred in connection with the New York and Massachusetts actions.

Bloom also asserts that he is entitled to reimbursement of $4,696.75 for fees and expenses incurred in connection with the *Rosenblum* action in New Jersey—$2,841.25 expended by New Jersey counsel and $1,855.50 by Green and Friedman. Two hundred eighty-two dollars of this amount was requested in the Second Supplemental Affidavit of Allan Green and Jeffrey M. Graeber. I have concluded above that the fees requested in that affidavit should not be considered in the context of determining the amount of reimbursement to which Bloom is now entitled, but in the context of declaratory relief covering present and future fees for which no evidence was presented at trial. Because I have concluded that Bloom is entitled to coverage in the New Jersey action, and because the remaining amount requested is reasonable, I conclude that Bloom is entitled to a reimbursement of $4,414.75 in connection with the New Jersey action.

■ Bloom further argues that he is entitled to reimbursement for the substantial out-of-pocket expenses he has incurred, in addition to legal fees, in defense of the actions for which I have determined there is coverage. Bloom admits that he did not maintain contemporaneous records of his expenses, but asserts that his expenses can be estimated to be at least as great as DePalo's. I decline to reimburse Bloom for any supposed expenses in the absence of any records or proof as to the amount expended.

Both DePalo and Bloom have requested an award of 12 percent simple interest on the amounts for which they are entitled to reimbursement. DePalo argues in his post-trial brief that interest should be awarded on the entire amount as of the date on which defendants filed their answer in this action denying coverage. *See* Mario DePalo's Post-Trial Brief at 3–4 (May 23, 1985). Defendants assert that DePalo and Bloom

are entitled only to interest on legal fees and expenses actually paid from the dates on which such payments are made. *See* Reply Memorandum to Mario DePalo's Post-Trial Brief at 2.

Defendants' position at first glance has some appeal, because an award of interest is supposed to represent compensation for loss of the use of money. The Massachusetts Appeals Court, however, has recently rejected a similar argument in a case remarkably close to this one. *See Sterilite Corp. v. Continental Casualty Co.*, 20 Mass.App.Ct. 215, 479 N.E.2d 205 (1985). In *Sterilite*, the trial court determined that defendant was in breach of its duty to plaintiff under an insurance policy to defend an action brought against plaintiff, and it awarded plaintiff damages. Defendant appealed from the entry of judgment ordering the payment of interest on the damages awarded from January 5, 1976, the date defendant disclaimed coverage and declined to defend the action against plaintiff. Defendant argued that the computation of interest from January 5, 1976 resulted in a windfall to plaintiff, because damages were unliquidated at that time and the major portions of plaintiffs' legal expenses which comprise the award of damages were not incurred until after October 20, 1980, the date of the commencement of plaintiffs' action against it. Defendant urged the appeals court to hold that interest should be computed as of the dates of the various billings for legal expenses or as of the date of commencement of the action against it. *Id.* at 216, 479 N.E.2d at 206.

The Massachusetts Appeals Court rejected defendant's argument. It noted that the case involved only a question of the construction of the relevant statute, Mass. Gen.Laws Ann. ch. 231, § 6C (West 1985). That statute provides as follows:

> In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the

rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action.

In interpreting § 6C, the court stated that the statute "means just what it says on its face . . .," and "permits no compromise." 20 Mass.App.Ct. at 218, 479 N.E.2d at 207 (citation omitted). It concluded that the legislature, by passing the statute, "intended to abrogate the common law rule which distinguished between liquidated and unliquidated damages," and noted that previous cases had approved, without discussion, its construction of the statute. *Id.* at 218–19, 479 N.E.2d at 207. The court added that

> there is a discernible and plausible reason—beyond the elimination of the distinction between cases involving liquidated and unliquidated damages—for establishing fixed dates from which interest is to be calculated. The Legislature may well have determined that the merit of other approaches was outweighed by the administrative value of "a fixed rule for mathematically calculable interest . . . avoid[ing] the costs and delays incident to disputes over details such as might be presented here if interest were awarded separately on many elements of damages from many different dates of accrual."

*Id.* at 219–20, 479 N.E.2d at 208, *quoting Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 550 F.Supp. 231, 246–47 (D.Mass.1982), *aff'd in part, rev'd in part on other grounds*, 708 F.2d 1 (1st Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983).

▆▆▆ The reasoning of the court in *Sterilite* is sound. The administrative complexity of following the approach suggested here by defendants would be enormous, because plaintiffs paid fees and expenses for which they are entitled to reimbursement at numerous different times. *See,*

*e.g.*, Plaintiffs' Exhibit 47A. I conclude that I should apply the decision in *Sterilite* to this case and award interest to DePalo and Bloom on the amounts for which they are entitled to reimbursement in connection with the Massachusetts and New York actions from September 16, 1975, the date on which defendants filed their answer in this case and denied coverage.

In their most recent submission, filed after the decision in *Sterilite*, plaintiffs assert that interest should be computed as of September 7, 1973, the date plaintiffs sent defendant insurers a letter demanding that the insurers provide coverage for them in one of the securities fraud actions filed against them. *See* Plaintiffs' Exhibit 18. Alternatively, plaintiffs assert that interest should be computed as of June 11, 1975, the date their complaint against the insurers was originally filed in Middlesex Superior Court. *See* Letter, Docket No. 77 (August 2, 1985). I reject both of these positions. Although the statute states that interest should be awarded "from the date of the breach or demand," it would be highly inequitable to award interest from the date of the demand letter, at which time defendant insurers had been given no opportunity to affirm coverage and avoid any breach. Were I to accept plaintiffs' assertion, parties to a contract would have an inducement to send immediate demand letters to each other so as to allow for the computation of interest from the date of such letters in the event of any future breach. Furthermore, the court in *Sterilite* computed interest from the date the defendant disclaimed coverage, not from the date plaintiff demanded such coverage. *See Sterilite*, 20 Mass.App.Ct. at 215–16, 479 N.E.2d at 205–06. I therefore conclude that interest should be awarded from September 16, 1975, the date in which defendant insurers in this case filed their answer disclaiming coverage.

DePalo and Bloom did not notify the insurers of the claim against them in New Jersey until November 27, 1984. *See* Plaintiffs' Exhibit 22. Subsequently, plaintiffs moved to amend their complaint in this case to allege coverage in the New Jersey action and their motion, being unopposed, was allowed on February 22, 1985. Defendants filed their answer to the amended complaint on March 6, 1985. They did not, in their answer, affirm their obligation to provide coverage as to a duty to reimburse plaintiffs' defense costs in the New Jersey action, and at least implicitly if not explicitly the answer is fairly read as denying such an obligation. I therefore conclude, in applying § 6C, that it is appropriate to award interest to DePalo and Bloom on the amounts for which they are entitled to reimbursement in defense of the New Jersey action as of March 6, 1985.

Plaintiffs further argue that defendants' conduct in continuing to refuse to provide coverage to them after the court's Opinion on December 31, 1984 constitutes an unfair or deceptive business practice under Mass. Gen.Laws Ann. ch. 176D, § 3(9)(e)–(h) (West Supp.1985). Therefore, plaintiffs assert, they are entitled to recover their costs and expenses, including legal fees, incurred in this action after December 31, 1984, and double or treble any damages they have incurred since then, under the Massachusetts unfair or deceptive trade practices statute, Mass.Gen.Laws Ann. ch. 93A, § 9(3) and (4) (West 1985).

█ I agree that defendants violated ch. 93A through their conduct following the court's ruling on December 31, 1984 that plaintiffs' claim to coverage under defendants' policies was not barred by the fraudulent activities of other named insureds. It is undisputed that DePalo and Bloom sent defendants a written demand for relief on January 21, 1985, more than thirty days before filing a motion to amend their complaint to seek relief under ch. 93A. *See* Exhibit 1 to Amended Motion for Leave to Amend Complaint (Apr. 10, 1985). Plaintiffs therefore complied with the requirements of the statute. *See* Mass.Gen. Laws Ann. ch. 93A, § 9(3) (West 1985). It is also clear that defendants' response failed to provide the relief requested in the written demand. I find that defendants failed to effectuate a prompt, fair and eq-

uitable settlement of plaintiffs' claims for coverage in connection with the New York and Massachusetts actions, after it was clear that plaintiffs were entitled to such coverage under the insurance policies. *See* Mass.Gen.Laws Ann. ch. 176D, § 3(9)(f) (West Supp.1985). *See also* Plaintiffs' Exhibit 54. I further find that defendants have compelled plaintiffs to continue their litigation after December 31, 1984 to recover amounts due them under defendants' policies for fees and expenses incurred in connection with these actions. *See id.*, ch. 176D, § 3(9)(g). I therefore conclude, based on these findings, that defendants have committed an unfair practice in violation of ch. 93A, entitling DePalo and Bloom to relief under the statute. *Cf. DiMarzo v. American Mutual Insurance Co.*, 389 Mass. 85, 449 N.E.2d 1189 (1983) (wrongful actions of insurer may violate ch. 93A).

■ I therefore turn to the question of appropriate relief. The statute provides in relevant part that "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater." Mass.Gen. Laws Ann. ch. 93A, § 9(3) (West 1985). Damages here would be those fees and expenses incurred by plaintiffs in connection with the Massachusetts and New York actions after December 31, 1984. Based on evidence in record, DePalo has already incurred $121.75 in fees or expenses in 1985, *see* Plaintiffs' Exhibit 47A, and is expected to incur additional expenses. DePalo is therefore entitled to recover these expenses because of defendants' violation of ch. 93A.

The Supreme Judicial Court has stated, however, that duplicative damage recoveries for violation of ch. 93A are not permitted where the same acts cause the same injury under more than one theory. *Calimlim v. Foreign Car Center, Inc.*, 392 Mass. 228, 236, 467 N.E.2d 443, 448 (1984). Here, I have already determined that DePalo is entitled to recover these amounts as part of his damages for defendants' breach of the insurance contract. It is clear that such damages are based on the same acts taken by defendants—their failure to provide coverage for DePalo and Bloom in connection with the five securities fraud actions. I therefore conclude that defendants' violation of ch. 93A presents an additional ground for recovery of amounts awarded for defendants' breach of the insurance policies.

Based on the evidence adduced at trial, Bloom has incurred no fees and expenses in connection with the Massachusetts and New York actions after December 31, 1984. According to the Second Supplemental Affidavit of Alan Green and Jeffrey M. Graeber, Bloom has incurred $615.50 in fees and expenses in 1985 in connection with these actions. As noted above, I do not consider this affidavit in determining the amount for which Bloom is entitled to reimbursement, defendants having no opportunity to challenge it at trial. Nevertheless, the affidavit may properly be considered in the context of the declaratory relief to be entered in this case. *See* section V, *infra*. In that context, it is clear that at least $25 of the $615.50 incurred in 1985 was reasonably expended in defense of the Massachusetts and New York actions. Furthermore, whether all or some portion of the $615.50 incurred in 1985 is appropriately awarded as declaratory relief, it is clear that such an amount would be based on the same acts taken by defendants for which I have found a violation of ch. 93A—their failure to provide coverage in connection with the five securities fraud actions after December 31, 1984. Therefore, because Bloom will be awarded some amount greater than $25 in the context of declaratory relief for fees and expenses incurred in 1985 in connection with the Massachusetts and New York actions, and because duplicative damage awards for violation of ch. 93A are not permitted where the same act causes the same injury under more than one theory, *see Calimlim*, 392 Mass. at 236, 467 N.E.2d at 448, I conclude that no addition to the amount of the judgment in this case is required or appropriate, the damages recoverable for this violation of ch. 93A being included in the judgment on other grounds as well.

Plaintiffs argue that the court should double or treble the damages awarded under ch. 93A, on the ground that the insurers' actions constitute a knowing and willful violation of the statute and were taken in bad faith. *See* Mass.Gen. Laws Ann. ch. 93A, § 9(3) (West 1985). I decline to do so. Plaintiffs have not presented evidence sufficient for the court to find that defendants' actions were taken in bad faith or were a knowing or willful violation of the unfair trade practices statute.

The statute also provides for an award of reasonable attorney's fees and costs in connection with an action under ch. 93A. *Id.* ch. 93A, § 9(4). DePalo asserts he has incurred legal fees of $5,152.78 and expenses of $913.35 in connection with this action from January 1, 1985 until May 10, 1985. Bloom asserts he has incurred $8,812 in fees and expenses in connection with this action from January 1, 1985 to May 8, 1985. Five thousand six hundred fifty-four dollars of the above amount was requested in the Second Supplemental Affidavit of Allan Green and Jeffrey M. Graeber. I have concluded above that fees requested in that affidavit should not be considered in the context of determining the amount of reimbursement to which Bloom is now entitled under defendants' policies. Here, the claim is one for fees in this action, some of which would normally be expected to accrue for services rendered after the evidence at trial was closed. I conclude that it is appropriate to consider the second supplemental affidavit in this context. Defendants have filed no response to that affidavit other than the motion to strike on grounds that I here reject. Finding the claimed amounts to be reasonable, I award $6,066.13 to DePalo and $8,812 to Bloom as fees and expenses incurred in connection with this action after December 31, 1984.

I decline to award plaintiffs any fees or expenses incurred in this action before December 31, 1984. I cannot say that, under the terms of the Pacific policy, such fees and expenses constitute "loss, liability, cost or expense" incurred by reason of any claim with respect to the purchase or sale of Giant securities. Rather, these fees and expenses were incurred in this action to enforce contractual obligations under the insurance policy.

## IV. *Touche's Motion to Enforce Its Settlement Agreement*

Touche has moved the court to enforce a settlement agreement it entered into with defendant insurers on March 14, 1985. Under the terms of that agreement, Touche was to receive general releases and a check for $200,000 from defendants. In exchange, Touche was to give the insurers certain general and limited releases relating to claims against DePalo and Bloom, as well as certain side letters. The parties were to exchange and execute the necessary papers and settlement check by March 29, 1985. *See* Exhibit B to Affidavit of S. Beville May (May 3, 1985). Defendants have failed to perform under the terms of the agreement to this day.

"[A] trial court retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court." *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir.1982). This court therefore has the power to consider and determine Touche's motion.

Both parties assert that they have reached an agreement. *See* Transcript of Conference, June 14, 1985, at 7–8. They disagree, apparently, merely about the construction and interpretation. It is undisputed, however, that defendant insurers have neither paid over $200,000 to Touche nor provided Touche with the settlement documents called for under the agreement.

For reasons explained below, I find that a binding contract of settlement was reached, and I conclude that defendants must pay over $200,000 to Touche. I further conclude that it is appropriate to award 12 percent interest on that amount from March 29, 1985, the date by which the terms of the settlement agreement were to

be completed, until the date of judgment. *See* Mass.Gen.Laws Ann. ch. 231, § 6C (West 1985). Finally, I conclude that Touche and the insurers must execute and exchange all settlement documents called for under the agreement of March 14, 1985. I do not, however, award Touche attorney's fees for having to move to enforce the agreement, no statutory basis having been shown for such an award.

▬ I now turn to issues regarding interpretation of the settlement agreement and its effect on the parties. Counsel for both Touche and the insurers have submitted affidavits which detail the actions taken by the parties both before and after the signing of the settlement agreement on March 14, 1985. Touche has submitted a memorandum, however, opposing the consideration of parol evidence relating to what the settlement agreement supposedly means, "when the Agreement itself plainly states what it means." Memorandum Opposing the Consideration of Parol Evidence at 1 (June 21, 1985). Touche has therefore moved to strike certain paragraphs in the affidavit of Robert D. City, counsel for the insurers, on the ground that they contravene the parol evidence rule by introducing evidence relating to negotiations which occurred before the execution of the settlement agreement. I conclude that I should not consider parol evidence in interpreting the terms of the agreement. The parties have not shown the existence of any circumstances, such as fraud or mistake, so as to justify consideration of evidence of prior or contemporaneous negotiations leading to the agreement. *See, e.g., Gifford v. Gifford,* 354 Mass. 247, 248–49, 236 N.E.2d 892, 893 (1968). I therefore consider only the language of the agreement itself in interpreting its meaning and effect. Having examined the proffered parol evidence, however, I also find that were I to consider the parol evidence offered in this case I would come to the same interpretation as I come to below on the basis of the language of the agreement itself.

▬ Paragraph 9 of the settlement agreement states that Touche would deliv-er to the insurers the following document as part of the agreement:

A letter from Touche Ross to the SEC Act Insurers to the effect that Touche Ross, while reserving the right to obtain judgments, will not attempt to effect collection of those judgments as against Alfred H. Bloom or Mario dePalo (insofar as the attempt to effect such collection causes said defendants to assert any claim against the SEC Act Insurers) in an action entitled *H. Rosenblum, Inc. v. Jack F. Adler,* Superior Court of New Jersey, Law Division, Bergen County, Docket No. L–5968–74 or in an action entitled *Treisman v. Touche Ross & Co.* presently pending in the state court in New Hampshire, for the reasons that Touche Ross has determined that Messrs. Bloom and dePalo have no substantial assets other than claims against the SEC Act Insurers and that the actions described in this paragraph do not come within the scope of the coverage of the SEC Act liability policy or policies issued by the SEC Act Insurers to Giant Stores Corp.

*See* Exhibit B to Affidavit of S. Beville May. Touche's tendered letter states that it "agrees that it will not attempt to effect collection on judgments against Bloom and DePalo" in the two lawsuits mentioned in paragraph 9 of the agreement "insofar as the attempt to effect such collection causes these defendants to assert any claim against the SEC Act Insurers." Exhibit N to Affidavit of S. Beville May. Despite defendants' argument to the contrary, I conclude that Touche's letter substantially conforms to the language of paragraph 9 and fulfills the terms of the agreement.

▬ Interpreting the language of the letter and paragraph 9 of the agreement, I conclude that the agreement and the letter effectively bar Touche from proceeding to collect *any* judgment against DePalo and Bloom in the New Jersey and New Hampshire actions. DePalo and Bloom have clearly stated that they would assert claims against the insurers were Touche to proceed against them under any theory. Nei-

ther the letter nor the agreement requires that any claims made by DePalo and Bloom be reasonable or made in good faith. Furthermore, even were I to impose such a good faith or reasonableness requirement, I would still conclude that the statements of DePalo and Bloom that they would assert claims against the insurers arising out of the New Jersey or New Hampshire actions are entirely reasonable on the evidence before me. On grounds discussed in section II, *supra,* in connection with the New Jersey action, it would be reasonable for DePalo and Bloom to assert that any claims made against them in the New Jersey and New Hampshire actions arise in part at least from the false financial statements found in the Giant registration statement filed in connection with Giant's issuance of stock. Just as it would be reasonable for DePalo and Bloom to assert coverage under defendants' policies for any claim arising out of the false representations made in the financial statements in connection with the issuance of stock, so too would it be reasonable for plaintiffs to assert coverage for any claims as to which the false financial statements are among the alleged causes of the losses for which damages are claimed. This analysis applies to the New Hampshire action as well as the action in New Jersey. I therefore conclude, in enforcing the settlement agreement and as a condition of such enforcement, that Touche may not proceed to collect any judgment against DePalo and Bloom in either the New Jersey or the New Hampshire action.

Touche's arguments against the above interpretation of the settlement agreement are without merit. First, whether or not Touche has any duty running to DePalo and Bloom is beside the point. As Bloom correctly notes, Touche bound itself by the terms of the settlement agreement not to proceed to collect a judgment against DePalo and Bloom to the extent that doing so would result in claims over against the insurers. *See* Plaintiff Alfred H. Bloom's Memorandum in Reply to Touche's Motion to Enforce Settlement Agreement at 2 (May 31, 1985). The agreement itself stated that Touche had determined that the New Jersey and New Hampshire actions did not come within the scope of coverage under the insurers' policies. I have concluded otherwise. Touche was, of course, entirely free to recite its contention about applicable law. But that recitation is only a contention, and one I have determined to be erroneous. Touche therefore cannot proceed to collect judgment against DePalo and Bloom in these actions. Second, Touche's argument that it "did separate the covered from non-covered claims, and released the covered claims in the settlement," Memorandum of Touche Ross & Co. on Court's Proposed Rulings on Settlement Agreement at 23 (May 24, 1985), even if true, is not determinative of the issue before me. That is, the question whether Touche can collect judgments against plaintiffs is not determined by whether Touche is asserting covered or non-covered claims against them. Rather, as the language of the settlement agreement clearly states and as I have explained above, whether Touche can collect judgments against DePalo and Bloom is determined by whether its attempts to do so would cause DePalo and Bloom to assert claims against the insurers. Since any claim which Touche may assert will cause DePalo and Bloom to assert reasonable and good faith claims against the insurers, I conclude that Touche may not proceed to collect judgments against DePalo and Bloom in the New Jersey and New Hampshire actions.

V. *Additional Declaratory Relief*

█ Plaintiffs have requested that the court enter an order directing the insurers to pay all fees and expenses incurred in the past or in the future in connection with this action and the Massachusetts, New York, and New Jersey actions, including fees and expenses for which they have not yet requested reimbursement. Because I have concluded that plaintiffs are entitled to reimbursement for their fees and expenses in the above actions, either under defendants' policies or because of the violation of ch. 93A, some form of order applicable to fu-

ture fees and expenses is appropriate. After the entry of judgment in this case, defendants will be required to reimburse plaintiffs for all fees and expenses reasonably incurred in this action and in connection with the Massachusetts, New York, New Jersey, and New Hampshire actions, as to which claims for reimbursement have not been finally determined in the judgment entered in this action. Unless plaintiffs and defendants stipulate that defendants may discharge their obligation regarding defense by actually defending DePalo and Bloom, I will order defendants after this date to discharge their obligation to plaintiffs under the policies, either by providing plaintiffs with a defense in these actions or by paying the costs associated with their defense in these actions. Also, as plaintiffs request, defendants will be ordered to pay any future fees and expenses on a monthly basis as they become due.

Plaintiffs also request a ruling that defendants have failed to prove that the limits of the policies have been exhausted and that the amount paid in settlement to the underwriters should not be prorated against all three of the policies. The parties, however, have submitted no evidence showing either that the policy limits are or are not exhausted or that the settlement to the underwriters should or should not be prorated. Issues as to policy limits are not before me for determination.

Plaintiffs argue that defendants have violated their duty to the insureds by entering into a settlement agreement with Touche without giving equal consideration to plaintiffs. They therefore request an order to the effect that the amount paid to Touche as part of the settlement agreement not apply against the policy limits or to exhaust any funds available to plaintiffs.

Numerous courts have stated that an insurance company must give at least equal consideration to the insured's interests as to its own when making settlement decisions. *See, e.g. Natural Service Industries, Inc. v. Hartford Accident and Indemnity Co.*, 661 F.2d 458, 461 (5th Cir. 1981); *Peterson v. Allcity Insurance Co.*, 472 F.2d 71, 77 (2d Cir.1972). Defendant insurers contend that they have not violated this duty because DePalo and Bloom are fully protected by the settlement with Touche. Extensive discussion of this issue has occurred in hearings in this action. *See, e.g.*, Transcript, March 7, 1985, at 3–4; Transcript, April 30, 1985, at 5–6, 9; Transcript, May 9, 1985, at 21–22; Transcript, May 10, 1985, at 20. However, no evidence is before me from which I could make a final determination as to what impact, if any, the settlement may have upon any dispute that may arise as to applicability of limits of liability under the coverage or as to how the settlement in some other way may affect the interests of DePalo and Bloom. Those issues have not been presented to the court by any party to this action, and I explicitly make no ruling upon any potential dispute regarding applicable limits of liability or any claim that the settlement between defendant insurers and Touche Ross was in violation of the defendant insurers' duty to give at least equal consideration to their insureds' interest when settling.

Finally, plaintiffs request that Touche be precluded from proceeding further against them in the New Jersey action, barred from taking steps to obtain or enforce a judgment against them in the New Jersey action, and prohibited from filing any pleadings, making any claims, or proceeding against them in any way in the New Hampshire action. I conclude that I cannot properly enter such an order, since it is beyond the scope of my interpretation of the meaning and effect of the settlement agreement between Touche and the insurers. Rather, as explained in section IV, *supra*, I will enter an order enjoining Touche from proceeding to effect collection on any judgments against DePalo and Bloom in the New Jersey and New Hampshire actions. Furthermore, I will enter an order to the effect that plaintiffs are entitled to coverage under defendants' policies in the New Hampshire action, and in any other actions arising in the future, as to any claims as to which the false financial

statements in Giant's registration statement filed in connection with Giant's issuance of stock in 1972 are among the alleged causes of the losses for which damages are claimed.