Jack H. SHAPIRO, et al., Plaintiffs,

v.

AMERICAN HOME ASSURANCE COMPANY, Pacific Indemnity Company, Certain Underwriters at Lloyds of London, and Surplus Lines Insurance Company, Defendants and Third-Party Plaintiffs,

v.

Clinton W. BENNETT, et al., Third-Party Defendants.

Civ. A. No. 75–2728–K.

United States District Court, D. Massachusetts.

Dec. 31, 1984.

As Modified Jan. 31, 1985.

Edward J. Barshak, Jeffrey Somers, Alexander E. Finger, William A. Zucker, Boston, Mass., Oscar Wasserman, Newton, Mass., for plaintiffs.

Garrick F. Cole, G. Richard Snell, Daniel B. Bickford, Robert City, Boston, Mass., for defendants.

Mark A. Michaelson, Boston, Mass., for third-party defendants.

Opinion

KEETON, District Judge.

Plaintiffs in this action, Mario DePalo and Alfred Bloom, are former officers and directors of Giant Stores Corp. ("Giant"). They seek a declaration that they are covered under three Securities Act Liability policies issued to Giant by defendants Pacific Indemnity Company ("Pacific"), Lloyds of London, and International Surplus Lines Insurance Company. Pursuant to Fed.R.Civ.P. 42(b), the trial of this case was divided into phases. The first phase, concerning whether plaintiffs' claims to coverage are barred because of the fraudulent activities of other insured officers and directors of Giant, was heard during a two-day bench trial on November 27-28, 1984.

## I. *Findings of Fact*

On or about December 19, 1972, Pacific Indemnity Company issued a Securities Act Liability policy to Giant. The policy covered three separate stock registrations, "[a]s per Registrants' Forms A, B and C." The registrations, numbered # 2-33436, # 2-41555, and # 2-44905, took place in 1969, 1971, and 1972, respectively. The public offering of the stock involved in the third registration occurred on August 24, 1972. The policy provides that:

> The Declarations together with the policy wording attached and Addendum No. 1 shall constitute the contract between the Insured and the Insurer. Subject to Endorsement # 1 to Registrants' Forms A, B and C attached.

Registrants' Form A is applicable only to Giant's 1969 stock registration. Registrants' Form C is applicable to Giant's registration and offering of August 24, 1972. The insuring clause of Registrants' Form C provides that, in consideration of the premium paid, Pacific "agrees to indemnify each insured described in Addendum No. 1 (all of whom are hereinafter collectively called 'Insured')" within the limits of the policy, from any loss, liability, cost or expense incurred by reason of any claim with respect to the purchase or sale of Giant securities,

but only to the extent that such loss, liability, cost or expense is incurred or sustained by reason of any claim or claims that the Registration Statement, any Preliminary Prospectus or the Prospectus in the form filed with the Securities and Exchange Commission at or about the time the Registration Statement becomes effective or as thereafter amended or supplemented, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

Registrants' Form C contains a clause under the caption "Exclusions," in paragraph II(b), providing that the insurance does not cover

any Insured for any loss, liability, cost or expense arising by reason of dishonest or criminal act, or by reason of an actual or willful intent to defraud on the part of, any such Insured or of any director, officer, partner, employees or trustee thereof, or of any person who controls any such Insured within the meaning of Section 15 of the Securities Act, whether acting alone or in collusion with others or within or without the usual scope of his duties.

Under the caption "Conditions," in Paragraph III(h) Registrants' Form C provides that:

If any Insured shall make any claim for reimbursement of loss, liability, cost or expense, knowing the same to be false or fraudulent in any material respect, this Insurance shall be void as to such Insured (and any person who controls such Insured within the meaning of Section 15 of the Securities Act) and all rights of such Insured (and such controlling person) hereunder shall terminate, but no such termination shall affect this Insurance as to any other Insured.

Addendum No. 1 contains a severability clause at paragraph 2, which provides that:

Except for the provisions of Condition (b) of this Insurance, this Insurance shall be construed as a separate contract with each Insured so that except as aforesaid, as to each Insured, the reference in this Insurance to the Insured shall be construed as referring only to that particular Insured, and the liability of the Insurer to such Insured shall be independent of its liability to any other Insured.

Lloyds of London issued an Excess Securities Act Liability policy to Giant covering the three offerings of stock described above. The Lloyds policy provides at paragraph 3:

Apart from being excess insurance and except as otherwise provided herein, this Policy is subject to the same terms, clauses, conditions and exclusions as are or may be contained in the Primary Policy and attaches only after the Underlying insurers shall have paid or admitted the full amount of their liability.

International Surplus Lines Insurance Company issued an excess insurance policy to Giant which also covered the three stock offerings. That policy provides in Part 1, paragraph 1:

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

During the period of 1971–72, Mario De-Palo was assistant treasurer of Giant, and Alfred Bloom was executive vice president and a director. As of August 24, 1972, Bloom was Giant's largest shareholder. Both DePalo and Bloom were individuals included in the coverage for insureds under the three insurance policies. The underwriters of the various securities offerings were among the named insureds under the policies.

DePalo acted on behalf of Giant in coordinating the procurement of Securities Act Liability coverage. He provided the broker, Joseph J. Rice, Ltd., with copies of Giant's Form S–1 Registration Statement filed with the Securities and Exchange

Commission ("SEC") on June 30, 1972, Giant's amendment to the registration statement filed with the SEC on August 24, 1972, and the agreement among the underwriters, dated August 24, 1972. Joseph J. Rice, Ltd., secured a binder for the insurance on August 8, 1972.

It is undisputed that the registration materials provided the insurers by DePalo contained false financial statements for the years 1971 and 1972 furnished by Giant. Those false financial statements were contained in the registration statement and prospectus filed by Giant with the SEC.

DePalo and Bloom, along with other officers and directors of Giant and Giant itself, have been named as defendants in five securities fraud cases in this district and the Southern District of New York. These cases allege in particular that the plaintiffs relied to their detriment on the false financial statements. The lawsuits allege facts against DePalo and Bloom which, if proved, would be within the scope of coverage of the defendants' policies, if DePalo and Bloom are entitled to coverage under the policies. They have also been named as third-party defendants in a case in the New Jersey Superior Court. The insurers were provided with due notice in a timely fashion of the various circumstances giving rise to litigation against DePalo and Bloom, but they have refused to defend or to acknowledge coverage as to a duty to indemnify DePalo and Bloom.

## II. *Conclusions of Law*

The sole issue for determination at this phase of the trial is whether plaintiffs' claim to coverage under the Securities Act Liability policies is barred by the fraudulent activities of insured directors and officers other than DePalo and Bloom. The defendant insurers argue that the policies are void *ab initio* as to DePalo and Bloom because the insurance was procured by means of the fraudulent financial statements of Giant submitted in connection with the procurement of the insurance and, in any event, that the policies do not cover the plaintiffs for any loss, liability, cost or expense arising by reason of the fraudulent financial statements. The parties agree that any conclusion regarding the applicability of the Pacific policy to DePalo and Bloom will apply to the other two policies as well, except as to the contention that the Pacific policy provides sufficient coverage so that the other two policies do not come into play.

■ In order to determine whether plaintiffs are covered under the insurance policies, I must interpret the provisions of the Pacific policy and determine the manifested intent of the parties in entering into the insurance contract. The Pacific policy contains a clear severability provision in Addendum No. 1, paragraph 2. This provision indicates that when the claim of any insured is considered, all other insureds must be disregarded and not treated as insureds for the purpose of that claim. In applying the severability provision to plaintiffs' claims, I must focus only on DePalo and Bloom and ignore all other insureds. Therefore, plaintiffs cannot be barred from coverage under the policy solely on the basis of the fraudulent acts of other insureds unless some other language in the policy so commands. The existence of a clear severability provision distinguishes this policy from the directors' and officers' liability insurance policy issued to Giant, which I previously held was voidable even as to innocent officers and directors because of misrepresentations made in the application for insurance by Shapiro, who was Giant's president and one of the insureds. *Shapiro v. American Home Assurance Company*, 584 F.Supp. 1245 (D.Mass.1984).

Defendants correctly argue that even if the severability provision requires that each insured be treated as having a separate policy, coverage under such a policy is limited by the other provisions in the policy. They further argue that paragraph II(b) under the caption "Exclusions" should be interpreted to bar payment to any insured on the basis of prohibited conduct by other insureds, such as is shown here.

904

█ Defendants' interpretation of the exclusion must be rejected. Reading together the severability clause and paragraph II(b), I interpret the policy to mean that each insured must be treated separately with respect to a defense of fraud as well as in other respects. If the insured making the particular claim of coverage willfully defrauded, then the exclusion applies and coverage for that insured is defeated. But if only some other insured willfully defrauded, the exclusion and severability clauses taken together plainly say the insured who is not guilty of the willful fraud is covered. The exclusion clause itself indicates that each insured must be treated separately. The clause provides that the policy does not cover "any insured for any loss, liability, cost, or expense" arising by reason of prohibited conduct "on the part of, any such insured...." The phrase "any such insured" refers to the antecedent phrase "any insured" and, contrary to defendants' contentions, "any" is singular and in both phrases refers to a particular insured. The phrase which follows, "or of any director, officer, partner, employees or trustee thereof," also has a clear meaning. The policy does not cover the insured corporation for prohibited acts of its directors or officers. It does not cover partners for prohibited conduct of their fellow partners or an individual insured for prohibited conduct of employees who act for that individual. Such a reading makes perfect sense of the exclusion in paragraph II(b) and is compatible with the severability clause. Moreover, if it were not compatible, the severability clause should be taken as the manifested intent of the parties since it appears in an addendum to the policy and thus may be inferred to have been intended to modify in some way the terms of the policy as otherwise stated.

Defendants further argue that the policy is void *ab initio* as to DePalo and Bloom because it was procured on the basis of the SEC registration materials submitted to Pacific, which included false financial statements. Plaintiffs argue that barring coverage for DePalo and Bloom on the basis of fraud by other insureds would make the insurance coverage illusory and worthless, since the policies are supposed to cover liability for misrepresentations in materials filed with the SEC. Defendants respond that their commitment to coverage is not illusory, since they have agreed affirmatively to insure against non-fraudulent misrepresentations (even though in the absence of such agreement innocent, material misrepresentation may be a defense to an insurance contract) but are here disclaiming on the basis of intentional fraud.

The severability provision in the Pacific policy does not explicitly address the question whether a false representation by one insured in applying for such insurance (either willfully false or unintentionally false) would bar all other insureds. Defendants' proposed interpretation, however, does not withstand close scrutiny. Their interpretation would mean that if one person among all the insureds intentionally deceived not only the insurers but also all other insureds, the other severable insureds would not be covered under the policy. Under this interpretation, underwriters who have no control over or intimate knowledge of the actions of the corporations whose securities they underwrite, and who purchase Securities Act Liability insurance specifically to guard against misrepresentations by those corporations, would not be protected in cases of such intentional deception. This would be true under defendant's interpretation even if the underwriter could not possibly determine the existence of any intentional deception. Such an interpretation would be contrary to the manifested intent of the entire transaction, given the well-understood source and motivation of the initiative for obtaining insurance coverage in this case—the demand of the underwriters for insurance protection. Such an interpretation would undermine securities underwriting practices and the customary relationships among corporations, those who underwrite securities for them, and the individuals acting for the parties in the transactions.

█ I conclude, based on a reading of the entire policy applicable to the 1972 reg-

istration, including the severability clause, that the manifest intent of the insurers and the insureds in this case was to provide coverage for underwriters, directors, officers, and other insureds separately as to each insured, unless that insured participated in an intentional fraud. Since it is assumed at this phase of trial that neither DePalo nor Bloom was involved in any intentional deception, I conclude that Pacific's defense based on intentional fraud has not been established.

Defendants argue also that neither DePalo nor Bloom is covered under the policy even under the policy interpretation I have adopted above.

 They first assert that DePalo's submission of the registration materials which included the false financial statements amounts to an innocent material misrepresentation, allowing the insurers to disclaim coverage against him under common law. This argument has facial appeal, and especially so in view of the ordinarily applicable rule that proof of a material, false representation is a defense, even if the representation was not intentionally false. On closer examination, however, the argument must be rejected. DePalo testified that he was acting on behalf of Giant in obtaining Securities Act Liability insurance. He neither prepared nor signed the registration statements submitted to the insurers, and made no personal representation as to the truth of their contents. It would be inappropriate to void the policy as to DePalo, and not as to other innocent insureds, merely because of the circumstance that DePalo happened to be the person physically delivering the registration materials to the insurers. In doing so, he was merely transmitting information for his employer. I therefore conclude that, under a fair and reasonable interpretation of the severability clause, DePalo's submission of the registration materials does not bar coverage for him.

 Defendants assert that Bloom is not entitled to coverage under paragraph III(h) of the policy, the false claims exclusion. They argue that, as an officer, director, and largest shareholder of Giant, Bloom is a control person for the purposes of this clause and any fraudulent claims made under the policy by Giant may be attributed to Bloom. This contention must be rejected. No proof was offered that Giant made a false claim under the policy. In fact, for practical purposes Giant was defunct at the time this action was commenced. In making this argument, defendant insurers misconstrue the purpose of this clause, which is to protect the insurers against claims which themselves are false. I assume the submission of false financial statements to be fraudulent, but the mere fact of Giant's fraud in obtaining the insurance policies does not by itself turn any subsequent claims by other named insureds into false ones so as to bar coverage under paragraph III(h). In view of this point, taken together with the severability clause in the Pacific policy, I conclude that paragraph III(h) does not bar coverage for Bloom.

Defendants argue, next, that the deletion from Registrants' Forms B and C of terms more favorable to plaintiffs that appeared in Registrants' Form A manifests an intent contrary to the foregoing interpretation of the severability clause. It is true that paragraph X under the caption "Fraudulent Claims" in Registrants' Form A included language more explicitly compatible with severability than the language of paragraph II(b) and paragraph III(h) in Registrants' Form C, which apply to the 1972 registration. In Form A, paragraph X was as follows:

If any Insured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise this Insurance shall become void as to such Insured and all rights hereunder shall be forfeited by such Insured, but no statement by or on behalf of any of the Insured, whether contained in any application or otherwise, shall be deemed to be a warranty of anything except that it is true to the best of the knowledge and belief of the person making the statement, and no breach of warranty by any

one of the Insured shall void this Insurance as to the remaining Insured insured hereunder.

This provision in the Registrants' Form applicable to the 1969 registration is awkwardly drafted. References to "warranty" and to statements contained in an "application," are out of place when appearing in a clause captioned "Fraudulent Claims." "Application" is a term customarily used to refer to the process of making the contract rather than the process of making a claim. Also, all of the various trade usages relating to "warranty" in insurance transactions refer either to statements made in negotiating the contract or to conditions stated in the contract itself. Using "warranty" to refer instead to fraud or concealment in making a claim goes beyond usage customary in the industry. Thus, either "warranty" is used here by the drafter in an idiosyncratic sense unlikely to manifest the mutual intent of the insurers and insureds or else the text of this clause goes beyond its caption, stating conditions of coverage that relate to making the contract rather than making a claim under the contract. In either event, in the policy in question here, issued in 1972, paragraphs II(b) and III(h), along with the severability clause in addendum No. 1, adequately express the independence of each insured's rights of coverage from fraud against the insurer committed by another insured. In this context, the change of paragraph X in the insurer's Registrants' Form from the text of Form A, used in 1969, to the texts of Forms B and C, used in later years, is readily understood as improved drafting rather than a manifestation of changed intent as to the independence of one insured's claim from another insured's fraud against the insurer. Thus, I must reject the defendants' argument that this change in drafting manifested an intent contrary to the interpretation adopted here.

Given the conclusion that coverage for DePalo and Bloom is not barred under the policies, judgment cannot be entered on behalf of the excess insurers since the ex-act sum which the various insurers must provide DePalo and Bloom cannot as yet be determined.

For the foregoing reasons, plaintiffs' claim to coverage under the three Securities Act Liability policies is not barred by the fraudulent activities of other named insureds. It is so ordered.