NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0008n.06
Filed: January 4, 2005

No. 03-2170

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED |
| v. | ) ) ) | STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| THE JAQUES ADMIRALTY LAW FIRM, P.C., | ) ) ) | |
| Defendant-Appellant, | ) ) | |
| THE ESTATE OF LEONARD JAQUES | ) ) | |
| Defendant. | ) | |

Before: NELSON and COOK, Circuit Judges; and SARGUS, District Court Judge[*]

COOK, Circuit Judge. The Jaques Law Firm appeals the district court's decision allowing American Guarantee and Liability Insurance Co. to rescind the Firm's professional liability insurance policy. We affirm.

I

---

[*]The Honorable Edmund A. Sargus, Jr. United States District Judge for the Southern District of Ohio, sitting by designation.

The Firm, comprised of approximately eleven attorneys—including Leonard Jaques who was the Firm's President, sole director, and majority shareholder—sought professional liability insurance from American. The insurance application asked: "Does any lawyer . . . know of any circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm, the firm, or its predecessors?" The Firm's Vice President, who completed the application on its behalf, checked the "No" box next to the question and typed the following additional answer: "We have no reasonable expectation of any claims; however it is always possible on any file for someone to bring a frivolous or groundless action." American issued the requested policy, and the Firm later applied for a renewal. The renewal application asked whether any attorney was "aware of any claim, incident, act or omission in the last year which might reasonably be expected to be the basis of a claim or suit arising out of the performance of professional service for others." Again, the firm responded with a "No" answer, and American renewed the coverage.

Before the renewal policy expired, Leonard Jaques died unexpectedly. Following his death, the other attorneys in the Firm discovered that, since 1995, Leonard Jaques had misappropriated more than $15,000,000 of settlement funds owed to clients.

Arguing that Leonard Jaques's knowledge of potential liability rendered the Firm's application responses material misrepresentations and seeking to rescind the insurance policy, American sued the Firm.

The district court agreed that the Firm's applications materially misrepresented that no attorney knew of circumstances giving rise to liability and granted American's motion for summary judgment on its rescission claim.

II

Reviewing the district court's grant of summary judgment de novo, we start with the parties' agreement that Michigan state law governs this diversity action and their disagreement about *which* Michigan law applies. American views M.C.L.A. § 500.2218 as governing and the district court agreed. The Firm contests that provision's applicability, urging this Court to analyze the issues under Michigan common law instead. M.C.L.A. § 500.2218 provides:

**500.2218. Disability insurance; false statement in application materially affecting risk**

Sec. 2218. The falsity of any statement in the application for any disability insurance policy covered by chapter 34 of this code may not bar the right to recover thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

. . .

(4) A misrepresentation that an applicant for life, accident or health insurance has not had previous treatment, . . . shall be presumed to have been material.

As the district court opined, M.C.L.A. §500.2218, despite its narrow catchline, covers more than disability insurance. In subsection (4) the statute specifically also references life, accident, and

health insurance. We are not persuaded, however, to extend the statute to professional liability insurance inasmuch as Michigan courts have not applied M.C.LA.§ 500.2218 beyond the types of insurance explicitly included in the statutes' purview. Consequently, as advocated by the Firm, we apply Michigan common law to determine the outcome of this case.

III

Even under the common law, however, "where an insured makes a material misrepresentation in the application for insurance . . . the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins. Co., v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998) (citations omitted). This proposition holds even in cases of "innocent misrepresentation," so long as a party relies upon the misstatement. *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995).

Despite the Firm's assertions to the contrary, there exists no genuine dispute that its responses to the insurer constitute a misrepresentation. The Firm concedes that Leonard Jaques knew his wrongdoing exposed the Firm to potential liability and thus the Firm's representation that no attorney possessed such knowledge is inescapably false. The Firm does not challenge either the district court's conclusion regarding the materiality of the misrepresentation or its determination as to American's reliance on it when deciding to issue the policy. We agree with the district court's holdings on these issues, and conclude the Firm's responses amount to a material misrepresentation.

IV

We summarily reject as unfounded The Firm's contention that a material misrepresentation is a necessary but insufficient precondition to rescission under Michigan law. Its challenge to American's rescission rights as to "innocent" insureds—those who did not participate in the fraudulent response—merits some discussion, however. Michigan courts have not addressed whether a material misrepresentation by one insured permits rescission as to innocent insureds in the professional liability context, and decisions from other states arguably provide some support for the Firm's view. *See, e.g., First Am. Title Ins. Co. v. Lawson*, 827 A.2d 230 (N.J. 2003). The prevailing rule, however, is that a misrepresentation by an insured in an application for insurance permits rescission even as to innocent insureds. *Mazur v. Gaudet*, 826 F. Supp. 188, 194 (E.D. La. 1992). *See also, Home Ins. Co. v. Dunn*, 963 F.2d 1023, 1026 (7th Cir. 1992) (reasoning that "the very fact of a material misrepresentation [by one insured attorney] voids the policy," even as to innocent insureds, because the misrepresentation "caused [the insurer] to issue a policy to all the attorneys that otherwise would not have been forthcoming"); *Shapiro v. Am. Home Assurance Co.* (*Shapiro I*), 584 F. Supp. 1245, 1252 (D. Mass. 1984) (discussing the likelihood of joint and several liability among all insureds for the wrongdoing of one and holding that the insurer could "avoid responsibility to all the insureds on the basis of [a] misrepresentation"); *INA Underwriters Ins. Co. v. D.H. Forde & Co.*, 630 F. Supp. 76, 77 (W.D. NY 1985).

After reviewing relevant Michigan law, we find unpersuasive the Firm's reasons for asking this court to favor the minority rule. Instead, our assessment of Michigan law leads us to conclude

that the prevailing rule comports with Michigan insurance law and, therefore, to hold that a material misrepresentation by one insured permits rescission as to all insureds.

V

The Firm's policy arguments stressing the injustice innocent attorneys will suffer by allowing American to rescind the coverage fail to alter our opinion.  "While we sympathize with the innocent insureds' position, and recognize that innocent employees are likely to suffer if the entire policy is voidable because of one man's fraudulent response, it must be recognized that plaintiff insurers are likewise innocent parties."  *INA*, 630 F. Supp. at 77 (citations and internal quotations omitted). Moreover, "[t]here is no reason why the parties could not have negotiated a contract expressly providing the kind of protection to 'innocent' insureds that [the Firm] ask[s] this court to impute to the agreement."  *Shapiro I*, 584 F. Supp. at 1252.

We acknowledge that, even under the stricter rule, some courts, faced with a "clear severability provision," have denied rescission as to innocent insureds.  *Shapiro v. American Home Assurance Co. (Shapiro II)*, 616 F. Supp 900, 903-5 (D. Mass. 1984).  *See also Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 218-19 (S.D. NY 1990).  The Firm admits however, that this policy "contain[s] no express 'severability' clause."  It presses for severability, nevertheless, by pointing to the policy provisions pertaining only to coverage issues; these do not bring this policy within the ambit of the exception.  *See Mazur*, 826 F. Supp. at 194-195.

VI

The Firm contends for the first time on appeal that American's failure to return or even offer to return premiums the Firm paid operates as a bar to rescission.  Because the Firm failed to raise this argument before the district court, we do not consider it here.  *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990).

## VII

Finding the Firm's remaining assignments of error without merit, we affirm.